UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ALICIA KNECHT, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>  v.<br><br>LANPHERE ENTERPRISES INC., a domestic corporation,<br><br>         Defendant. | Case No. 3:19-cv-01991-AC<br><br>FINDINGS AND RECOMMENDATION |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Alicia Knecht ("Knecht") filed a class action lawsuit against Defendant Lanphere Enterprises Inc. ("Lanphere"), alleging Lanphere violated the Truth in Lending Act ("TILA") and Oregon's Unlawful Trade Practices Act when it sold her a vehicle and various products obtained from third-party vendors. Lanphere seeks to enforce arbitration agreements found in two contracts

Page 1 – FINDINGS AND RECOMMENDATION

signed by Knecht when she purchased her vehicle. Because Lanphere met the conditions precedent to compel arbitration under one agreement, the motion to compel arbitration should be granted.[1]

*Background*

Lanphere is a motor vehicle retailer that owns and operates five automobile dealerships in Oregon and routinely extends credit to automobile purchasers. (Class Action Allegation First Am. Compl., ECF No. 16 ("Complaint"), at 2, ¶ 1.) On or about September 14, 2019, Knecht purchased a new 2019 Kia Sorento from Lanphere in Beaverton, Oregon. (Complaint at 5, ¶ 16.) Lanphere arranged the financing of Knecht's vehicle and sold her seven products which Lanphere obtained from third-party vendors ("Third-Party Products"). (Complaint at 5, ¶ 17.)

Knecht alleges Lanphere quoted her a monthly payment for the total price of the vehicle which price included the Third-Party Products, but it failed to separately deliver the individual prices of each Third-Party Product, provide the total cost of the vehicle without the products added, and itemize five of the Third-Party Products in the Retail Installment Contract ("RIC"). (Complaint at 5, ¶ 18-19.) These actions are required under OAR 137-020-0020(3)(m). (Complaint at 5, ¶ 18.) Further, Knecht claims Lanphere violated the TILA by failing to disclose it retained a portion of the sales price for some of the Third-Party Products. (Complaint at 5-6, ¶ 20.)

Knecht signed three agreements (collectively, "Agreements") when she bought the vehicle from Lanphere. The first is the Motor Vehicle Purchase Agreement ("Purchase Agreement"). The Purchase Agreement describes the Kia Sorento, notes the price Knecht paid for the vehicle, and includes an arbitration clause in its "terms and conditions" which Lanphere seeks to invoke. (Decl.

---

[1] Both parties requested oral argument in their motion materials. The court finds this motion appropriate for disposition without oral argument and, pursuant to LR 7-1(d)(1), denies the request.

Page 2 – FINDINGS AND RECOMMENDATION

of Karen Voss in Supp. of Reply to Def.'s Mot. to Compel Arbitration, ECF No. 26 ("Voss Decl."), Ex. 1.) The arbitration clause states, in relevant part:

> Each party, at such party's option, shall have the right to require that any claim, controversy, or dispute between the parties, including but not limited to those arising out of or relating to the [Purchase Agreement] or the Vehicle, and including those based on or arising from any statute, constitution, regulation, ordinance, rule or any alleged tort, be determined by arbitration in accordance with the then affective arbitration rules of Arbitration Service of Portland, Inc., or the then affective commercial arbitration rules of the American Arbitration Association, whichever organization is selected by the party which first initiates arbitration by filing a claim in accordance with the filing rules of the organization selected . . . . If litigation has been commenced in court by either party (Dealer or Purchaser) with respect to a dispute . . .
>
> (a) the party who is the defendant or respondent in such litigation shall be deemed to have waived its option to arbitrate said dispute if such party files a general appearance in the litigation prior to filing a claim in arbitration in the manner specified above.

(Voss Decl., Ex. 1 at 3, ¶ 11.) Knecht also signed the RIC, which describes the financing terms and monthly payment on the vehicle loan. The RIC refers to the GAP Installment Sale Contract/Loan/Lease Agreement Addendum ("Gap Contract") on its first page, and lists the cost of the Gap Contract under the "Itemization of Amount Financed" section on its second page. (Voss Decl., Ex. 3 at 1-2.)

Finally, Knecht signed the Gap Contract. (Voss Decl., Ex. 2.) The Gap Contract lays out the terms of Knecht's gap coverage. Gap coverage serves to cover the "gap" between the amount owed on the vehicle and its depreciated value should the vehicle be totaled or stolen. On its first page, the Gap Contract states: "BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THE [GAP CONTRACT] . . . **HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS VEHICLE.**" (Voss Decl., Ex. 2 at 1.) (emphasis in original). The Gap Contract also includes an arbitration clause, which contains language limiting the application of the clause to "any controversy or dispute arising out

Page 3 – FINDINGS AND RECOMMENDATION

of or relating in any way to [the Gap Contract] or the sale of [the Gap Contract] . . ." (Voss Decl., Ex. 2 at 3.) Knecht has since canceled the Gap Contract in accordance with its terms. (Pl.'s Opp'n to Lanphere's Mot. to Compel Arbitration, ECF No. 31 ("Response"), at 2.)

*Legal Standard*

The Federal Arbitration Act ("FAA") holds arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An agreement to arbitrate is a "matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), and "the FAA directs courts to place arbitration agreements on equal footing with other contracts." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). Accordingly, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Unless parties to a contract clearly provide otherwise, courts determine the scope of an arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Courts should use state-law principles governing the formation of contracts to evaluate the validity of an arbitration agreement, *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and a valid arbitration agreement should be enforced according to its terms. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). To that end, a court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

The FAA was enacted to overcome the judiciary's hesitation to enforce arbitration agreements. *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). Therefore, "in applying general state-law principles of contract interpretation to the

Page 4 – FINDINGS AND RECOMMENDATION

interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id.* at 475-76. This presumption in favor of arbitrability is also recognized by the Oregon courts. *Livingston v. Metro Pediatrics*, 234 Or. App. 137, 147 (2010).

*Discussion*

I. Lanphere Has Met the Requirements for Arbitration Under the Purchase Agreement

Neither party challenges the existence of a valid arbitration agreement in the Purchase Agreement that encompasses the dispute at issue. (Response at 5); *see also Chiron*, 207 F.3d at 1130. The parties disagree over how the arbitration agreement's language should be interpreted, particularly the portion stating a defendant waives the right to arbitrate if they make a "general appearance" in court before filing an arbitration claim. (Voss Decl., Ex. 1 at 3, ¶ 11(a).) Knecht contends the language requires Lanphere to have a pending arbitration claim in place before making an appearance in court of any kind. (Response at 7.) This presumably renders as "general appearances" the motions for extensions of time and motions to compel arbitration made by Lanphere prior to filing the instant motion. (Response at 7.)

As the party arguing for a waiver of arbitration, Knecht bears "a heavy burden of proof." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). As such, "[a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* In support of her narrow interpretation of "general appearance," Knecht points to the principle that ambiguous terms in a contract of adhesion should be construed against the drafter. (Response at 8.)

However, the term "general appearance" seems unambiguous in this context. Indeed, Knecht herself acknowledges that, while the term is no longer recognized under federal or Oregon law, it likely refers to appearances in court constituting "protracted litigation." (Response at 6.) In *Benny v. Pipes*, the Ninth Circuit defined a "general appearance" as "an overt act by which the party comes into court and submits to the jurisdiction of the court." 799 F.2d 489, 492 (9th Cir. 1986). The interpretation of the term as "protracted litigation" is in line with previous Ninth Circuit cases holding acts inconsistent with the right to compel arbitration are found "when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Martin*, 829 F.3d at 1125; *see also Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, 552 F. App'x 663, 664 (9th Cir. 2014) (finding waiver when parties "conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss"); *see also Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding waiver when party litigated entire matter, including pleadings, motions, and approving pre-trial order, and only moved to compel arbitration two years after action was brought).

The lack of ambiguity surrounding the term "general appearance" and the rule that state contracts principles should be applied in light of the federal policy only to resolve doubts in favor of arbitration, combine to render unpersuasive Knecht's argument that the terms of the arbitration agreement should be construed against Lanphere. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (holding state law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [the FAA]"); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The [FAA] establishes that . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself

Page 6 – FINDINGS AND RECOMMENDATION

or an allegation of waiver, delay, or a like defense to arbitrability"). Further, the rule that ambiguity in a contract should be construed against the drafter applies "'only as a last resort' when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation." *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1419 (2019) (quoting 3 A. Corbin, Contracts § 559, pp. 268-70 (1960)).

Lanphere did not make a "general appearance" in court before filing the instant motion: the motions made for extensions of time are not "general appearances," and the prior motions to compel arbitration are based on the issue at hand and thus do not constitute "protracted litigation." *See Benny*, 799 F.2d at 492 (holding motions to extend time are not "general appearances" because they "do not manifest a clear purpose to defend"). The remaining requirements for arbitration under the Purchase Agreement are also met. Lanphere is in the process of "filing a claim in accordance with the filing rules of the organization selected." (Voss Decl., Ex. 1 at 3, ¶ 11.) Neither Arbitration Service of Portland, Inc. nor the American Arbitration Association (the organizations Lanphere, as initiator of arbitration may choose between) allow Lanphere to file for arbitration without a court order. (Decl. of John Barhoum in Supp. of Def. Lanphere Enters. Inc.'s Renewed Mot. to Compel Arbitration, ECF No. 25 ("Barhoum Decl."), Exs. 4-7.) Under these circumstances, Lanphere can compel arbitration only through the court and, therefore, the Motion to Compel Arbitration is in "accordance with the filing rules" of the available organizations and does not constitute a waiver of Lanphere's right to arbitrate.

Knecht also argues the structure of the arbitration clause supports her view. (Response at 8.) The clause lists court proceedings that are permissible before commencing arbitration, and a pre-arbitration motion to compel arbitration is not included in that list. (Response at 8.) However, given Lanphere's motion to compel arbitration is a permissible method to exercise the right to

Page 7 – FINDINGS AND RECOMMENDATION

arbitrate, the list of allowable pre-arbitration court proceedings is irrelevant because the motion does not constitute a separate court proceeding but is an integral part of the arbitration process itself.

II.     The Gap Contract Does Not Apply to Knecht's Claims

Knecht canceled the Gap Contract but, even if its terms are not likewise terminated, the Gap Contract's arbitration clause applies only to the purchase of gap coverage. Lanphere argues the arbitration clause of the Gap Contract must apply to this dispute because the Gap Contract is referenced in and subject to the terms of the RIC, which is part of the Purchase Agreement. (Def. Lanphere Enterprises Inc.'s Renewed Mot. Compel Arbitration, ECF No. 24 ("Motion") at 8-9.) Lanphere's argument goes against the terms of the Gap Contract, which unambiguously state the contract has no effect on the terms of the related vehicle sale. (Voss Decl., Ex. 2 at 1.)

Further, the Gap Contract's arbitration clause stipulates that it applies only to controversies or disputes arising from the Gap Contract. (Voss Decl., Ex. 2 at 3.) Knecht made no allegations under the Gap Contract. Conversely, the arbitration clause in the Purchase Agreement asserts it applies to claims arising from the Purchase Agreement or the vehicle sale. (Voss Decl., Ex. 1 at 3, ¶ 11.) Knecht's claims, which relate to the sale of the vehicle and the Third-Party Products, are thus encompassed by the Purchase Agreement. (Response at 2.) Applying the Gap Contract's arbitration clause to this dispute would render the Purchase Agreement's arbitration clause moot. *See Pioneer Res., LLC v. Lemargie*, 175 Or. App. 202, 208–09 (2001) (". . . we should give effect to every clause of a contract if possible." (citing Or. Rev. Stat. Ann. § 42.230 (West))).

Lanphere invokes Federal Rule of Civil Procedure 106 ("Rule 106"), which states: "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that

Page 8 – FINDINGS AND RECOMMENDATION

in fairness ought to be considered at the same time." (Motion at 9.) Lanphere claims that, because the Gap Contract is mentioned in the RIC, it must be included for the "agreements to be read completely." (Motion at 9.)

*In re CNET Networks, Inc.*, a case cited by Lanphere in support of this claim, held Rule 106 can compel parties to submit only those statements whose omission would distort the overall meaning of admitted documentation. *See* 483 F. Supp. 2d 947, 966 (N.D. Cal. 2007) (holding plaintiffs ignored certain important statements made by defendants while highlighting others, which manipulated information to plaintiffs' advantage). In the second case cited by Lanphere, *United States v. Collicott*, the court noted Rule 106 was enacted to avoid "a misleading impression created by taking matters out of context." 92 F.3d 973, 983 (9th Cir. 1996) (quoting FED. R. CIV. P. 106 advisory committee's note). Rule 106 applies "[w]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion." *Id.* (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)).

These circumstances do not apply in the instant case. While the first page of the RIC notes "[the Gap Contract] is a part of [the RIC]," it also states, for any insurance or protection listed in that section, "the policies or certificates issued by the Companies named will describe the terms and conditions." (Voss Decl., Ex. 3 at 1.) The Gap Contract states that its terms, including the arbitration clause, apply only to disputes related to the purchase of gap coverage. (Voss Decl., Ex 1 at 1; 3.) The references to the Gap Contract in the RIC exist alongside multiple other charges as part of the overall cost breakdown. Knecht's claims relate to the sale of the vehicle and the Third-Party Products, and neither the Gap Contract nor its cost play a significant role. The Gap Contract's omission does not distort or manipulate the impression given by the Agreements as they relate to Knecht's claims. *See Collicott*, 92 F.3d at 983 (holding Rule 106 did not apply where a

Page 9 – FINDINGS AND RECOMMENDATION

"complete statement did not serve to correct a misleading impression of a prior statement"); *see also United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985) (holding no violation of Rule 106 where party excludes "portions of a statement that are . . . neither explanatory of [or] relevant to the admitted passages" (quoting *United States v. Marin*, 669 F.2d 73, 84-85 (2d Cir. 1982))); *see also United States v. Castro-Cabrera,* 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008) ("The Rule of Completeness warrants admission of statements in their entirety when the Government introduces only a portion of inextricably intertwined statements").

III.     Knecht Cannot Compel Class Arbitration

Under the FAA, courts must "enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). "'[T]he first principle that underscores all of our arbitration decisions' is that 'arbitration is strictly a matter of consent.'" *Lamps Plus*, 139 S.Ct. at 1415 (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)). Arbitrators derive their "powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). To that end, it is important to note that there is a "fundamental" difference between class arbitration and the individual arbitration envisioned by the FAA. *Epic Sys.*, 138 S. Ct. at 1622-23. The advantages of individual arbitration are lower costs, efficiency, speed, and the ability to choose expert adjudicators to resolve specialized disputes. *Stolt-Nielsen*, 559 U.S. at 685. Class action "sacrifices the principle advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011). In *Stolt-Nielsen*, the Court held that, because of these differences, there is "reason to doubt the parties' mutual consent to resolve disputes through classwide arbitration." 559 U.S. at 685-86. Therefore, courts cannot

Page 10 – FINDINGS AND RECOMMENDATION

compel a party to submit to arbitration under the FAA unless there is a "contractual basis for concluding that the party *agreed* to do so." *Id.* at 684 (emphasis in original).

When it comes to an arbitration agreement, neither silence nor ambiguity provide a satisfactory basis for finding that the parties consented to class arbitration. *Concepcion*, 563 U.S. at 348. In *Lamps Plus*, the Court found ambiguity on the issue of class arbitration where the underlying contract stated that "arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment," despite the contract appearing to contemplate "purely binary claims" on its face. 139 S. Ct at 1413. The language of the Purchase Agreement is similar to the contract language in *Lamps Plus*, affording the right to arbitration for "any claim, controversy, or dispute between the parties." (Voss Decl., Ex. 1 at 3, ¶ 11.)

Despite Lanphere's claims, the Purchase Agreement is probably not "silent" with regard to class arbitration because "silence" does not mean that class arbitration was not explicitly included in the agreement. *Stolt-Nielsen*, 559 U.S. at 669. Instead, an agreement is "silent" on an issue when "there's been no agreement that has been reached on that issue." *Id.* Put another way, the parties must "*stipulate*[] that their agreement was silent about class arbitration." *Lamps Plus*, 139 S. Ct. at 1413 (emphasis in original). There was no such stipulation in the instant case. Nevertheless, the Purchase Agreement appears ambiguous, and the court "may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis." *Id.* at 1419.

*Conclusion*

Lanphere's motion (ECF No. 24) to compel arbitration should be GRANTED.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due within seventeen (17) days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 30th day of July, 2020.

_____
JOHN V. ACOSTA
United States Magistrate Judge